UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-0908

FRED NEKOUEE, individually,                    :
                                               :
            Plaintiff,                         :
                                               :
vs.                                            :
                                               :
LONGMONT BUSINESS PARTNERS,                    :
L.L.L.P., a Colorado limited liability limited :
partnership;                                   :
                                               :
            Defendant.                         :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, LONGMONT BUSINESS PARTNERS, L.L.L.P., a Colorado limited liability

limited partnership (sometimes referred to as "Defendant"), for injunctive relief, and attorney's

fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C.

§ 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.     Defendant's property, the Best Western Firestone Inn & Suites has an address of

11228 Business Park Circle, Firestone, Colorado 80504, in Weld County, Colorado ("Best

Western").

3.     Venue is proper in the District of Colorado because venue lies in the judicial district

of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      On his way to the Rocky Mountain National Park, Fred Nekouee stayed at the Best Western which forms the basis of this lawsuit on October 1, 2018 with a checkout on October 2, 2018.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 108-A at the Best Western.

10.      Due to the barriers to access Fred Nekouee encountered at the Best Western, Fred Nekouee is deterred from visiting the Best Western Inn to avail himself of the goods and services offered to the public there.

11.      Fred Nekouee visited the Longmont-Firestone area near the Best Western in early August 2018 and again on October 3, 2018 to attend a heavy equipment auction and he visited Rocky Mountain National Park on October 2, 2018.

12.     The Plaintiff returned to the Longmont-Firestone area in the first week of February of 2019.

13.     The Plaintiff has definite plans to return to the Longmont-Firestone area in early May 2019 to attend a heavy equipment auction and to vacation.

14.     Best Western is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

15.     The Plaintiff likes to stay at moderately-priced hotels that are a chain like Best Western.

16.     The Plaintiff plans to return to the Best Western again if the barriers to access are removed.

17.     The Plaintiff has encountered architectural barriers at the subject property.

18.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

19.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

20.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

21.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby restroom, the breakfast area, the hallway, the vending area, accessible guestroom 108-A, the restrooms in the accessible room 108-A, and in the pool and fitness areas of the Best Western.

22.     The Plaintiff is deterred from visiting the Best Western because of the difficulties

he will experience there until the property is made accessible to him in a wheelchair.

23.    Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Best Western.

24.    Best Western is a place of public accommodation.

25.    Defendant is responsible for complying with the obligations of the ADA.

26.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 31 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27.    Fred Nekouee desires to visit the Best Western not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28.    The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

29.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30.    Preliminary inspections of the Best Western have shown that ADA violations exist.

4

31.   The ADA violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.   (i) In the parking lot , one of the two parking spaces for disabled patrons does not have the signage and international symbol of accessibility.   (ii) One of the two parking spaces for disabled patrons does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) This lack of signage made it difficult for the Plaintiff to find an accessible parking space, and it deters him from staying at Best Western.   (iv) The action required to install signage with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the accessibility signs in front of the other parking spaces for disabled patrons than the parking space identified in subparagraph (a) above, are only about 25-28 inches above the ground surface measured to the bottom of the sign and not 60 inches above the ground measured to the bottom of the sign.   (ii) These parking space identification signs with the international symbol of accessibility are less than 60 inches above the ground surface measured to the bottom of the sign, in violation of Federal Law 2010, ADAAG § 502.6.   (iii) The short height of these signs above the ground surface made it difficult for the Plaintiff to find an accessible parking space, and it deters him from staying at Best Western.   (iv) The action required to install this sign at the proper height above the ground surface is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, there are no parking spaces for disabled patrons with van

accessible signage.   (ii) In the parking lot there are no parking spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting Best Western.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty of expense.

d.   (i) In the parking lot, there is no access aisle for the parking spaces for disabled patrons to the left of the front entrance as one faces Best Western.   (ii) No access aisle is provided for these accessible parking spaces, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.   (iii) The Plaintiff encountered this lack of an access aisle, and it made it difficult for him to unload from and load back into his vehicle and to maneuver his wheelchair to move to and from the entrance to the Best Western.   (iv) The action required to restripe this parking area to include an access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) The access aisle shown in the photograph below is about 37 inches wide and less than 60 inches wide.   (ii) This access aisle is less than the minimum required width of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG 502.3.1.   (iii) The Plaintiff observed this access aisle, and it deters him from visiting Best Western.   (iv) The action required to restripe this access aisle is easily accomplishable and able to be carried out without much difficulty of expense.



    **f.**   (i) In the parking lot, there is a change of level greater than 0.25 inches within the accessible route from a parking space for disabled patrons to the lobby entrance.   (ii) In the parking lot in the area shown in the photographs below, there is a change in level of greater than 0.25 inches within the accessible route, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   (iii) The Plaintiff encountered this change in level while moving in his wheelchair, and he required assistance to move over this change in level. (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.





g.   (i) The cross slopes of the walking surfaces on both sides of the entrance to the lobby are steeper than 1:48 (2%).   (ii) The cross slopes of these walking surfaces is steeper than 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered these steep cross slopes from the accessible parking space to the lobby entrance and near the outside chairs near the lobby entrance, and these cross slopes made his wheelchair unstable.   (iv) The action required to reduce these cross slopes of these walking surfaces is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR AND LOBBY AREA**

h.   (i) The force needed to open the lobby door is about 13 pounds and more than 5

pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door and to enter Best Western.   (iv) The action required to reduce the force necessary to open the lobby door is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The concierge bell, the water bottle dispenser and the snack bar are located on the portion of the lobby counter at about 51 inches and higher above the floor.   (ii)   These items are located higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not reach these items from his wheelchair due to their height above the floor.   (iv) The action required to relocate these items or to provide identical items at another location is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY RESTROOM**

j.   (i) The lobby restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the door way is blocked by a trash can.   (ii) The lobby restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches since such clearance is blocked by a trash can, in violation of Federal Law 2010, ADAAG § 404.2.4. (iii) The Plaintiff encountered this trash can while moving in his wheelchair, and due the location of the trash can, he required assistance to open the door and to exit this lobby

restroom.   (iv) The actions required to relocate this trash can and to put a written policy in place to relocate the trash can from this maneuvering clearance space are easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the lobby restroom, the rear wall grab bar is only 24 inches long and less than 36 inches long.   (ii) This rear wall grab bar is less than the minimum required length of 36 inches, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff encountered this short rear wall grab bar, and it made it very difficult for him to transfer from his wheelchair to the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) In the lobby restroom, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet. (ii) The position of this rear wall grab bar is in violation of Federal Law 2010, ADAAG 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff also had great difficulty using it to transfer from his wheelchair to the toilet.   (iv) The actions required to install a proper rear wall grab bar and to create the space to do so are easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the lobby restroom, the side wall grab bar is about 36 inches long and less than 42 inches long.   (ii) This side wall grab bar is less than 42 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the short length of this side wall grab bar, the Plaintiff had great difficulty using it to help transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the lobby restroom, the side wall grab bar only extends 46 inches from the rear wall and does not extend a minimum of 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the location and length of this side wall grab bar, the Plaintiff had great difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length and in a proper position from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the lobby restroom, as shown in the photograph below, the lavatory drain and supply pipes under the sink are not insulated.   (ii) This lavatory's drain pipes and supply pipes are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink and risked skin burns and injury to his legs since its drain and supply pipes are not insulated.   (iv) The action required to insulate these drain and supply pipes is easily accomplishable and able to be carried out without much difficulty or expense.



p.   (i) In the lobby restroom, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii)   The Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet due to its location.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the lobby restroom, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches and a maximum of 18 inches, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the location of this toilet from the side wall, the Plaintiff had more difficulty using the side wall grab bar and the

toilet paper dispenser.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) In the lobby restroom, the door lock requires tight grasping, pinching, or twisting of the wrist.   (ii) This door lock requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the lobby restroom, the coat hooks are installed at about 72 inches above the floor and higher than 48 inches above the floor.   (ii) These coat hooks are higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of these coat hooks above the floor, and it deters him from visiting Best Western.   (iv) The action required to relocate a coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

t.    (i) In the breakfast area, the coffee, hot water, and juice machine dispenser keys are all higher than 48 inches above the floor.   (ii) These coffee, hot water and juice machine dispenser keys are all higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the location of these dispenser keys above the finish floor, the Plaintiff required assistance to obtain coffee and juice.   (iv) The action required to relocate these dispenser keys or the coffee, hot water and juice machines is easily accomplishable and able to be carried out

without much difficulty or expense.

u.   (i) In the breakfast area, the jam and walnut stand tray is higher than 48 inches above the floor.   (ii) The jam and walnut stand tray is higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach the jam and walnuts from this tray.   (iv) The action required to relocate this tray is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the breakfast area, yogurt cups, boiled eggs, and butter packets in the mini-fridge are all located higher than 48 inches above the floor.   (ii) These items are all higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) From his wheelchair, the Plaintiff tried but could not reach these items due their height above the floor.   (iv) The action required to relocate the shelving in this mini fridge is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the breakfast area, the handle to the waffle maker in an open position is about 54 inches above the floor and higher than 44 inches above the floor.   (ii) This waffle maker handle is higher than a maximum of 44 inches above the finish floor where the reach depth is more than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii)   From his wheelchair, the Plaintiff tried but could not reach the handle of this waffle maker to make himself a waffle due to its height above the floor.   (iv) The action required to replace or relocate this waffle maker is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the breakfast area, the clear floor or ground space between the chair and the cabinet is less than 30 inches.   (ii) This lack of clear floor space between the chair and the

cabinet is in violation of Federal Law 2010, ADAAG § 305.   (iii) While moving in his wheelchair, the Plaintiff was blocked by this chair when he tried to access the water dispenser on the cabinet.   (iv) The actions required to move this chair away from this cabinet and to put a written policy in place to maintain the proper clearance space are easily accomplishable and able to be carried out without much difficulty or expense.

### ACCESSIBLE GUESTROOM 108-A

y.   (i) The force needed to open the door to accessible guestroom 108-A is about 13 pounds and more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open the lobby door is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) The time for the door to accessible guestroom 108-A to close from an open position of 90 degrees to 12 degrees from the latch is less than five seconds.   (ii) From an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is less than 5 seconds, in violation of Federal Law 2010, ADAAG 404.2.8.1. (iii) The Plaintiff required assistance to hold this door open so he could enter into guestroom 108-A in his wheelchair because the door closed so quickly.   (iv) The action required to adjust this door closer to close more slowly is easily accomplishable and able to be carried out without much difficulty or expense.

aa. (i) In accessible guestroom 108-A, the window handle or pull requires tight

grasping and pinching to operate.   (ii) This window handle or pull requires tight grasping and pinching to operate, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not open this window with a loose grip or closed fist.   (iv) The action required to replace this window handle or pull is easily accomplishable and able to be carried out without much difficulty or expense.

bb.  (i) In accessible guestroom 108-A, the ironing board is on a shelf about 55 inches above the floor and higher than 48 inches above the floor.   (ii) This ironing board and shelf are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach this ironing board due to its height above the floor.   (iv) The action required to lower this shelf is easily accomplishable and able to be carried out without much difficulty or expense.

cc.  (i) In accessible guestroom 108-A, the coffee maker is located on a shelf that is higher than 48 inches above the floor.   (ii) This coffee maker and shelf are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach the coffee maker due to its height above the floor.   (iv) The actions required to relocate this coffee maker and to have a written policy in place so that it remains accessible are easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 108-A**

dd.  (i) The door to the restroom in accessible guestroom 108-A is flush with the floor and requires more than 5 pounds of force to open it.   (ii) This door is flush with the floor and very difficult to open, more than 5 pounds of force, and to access behind the door, in violation of Federal Law 2010, ADAAG §§ 404.2.9 and 305.   (iii) Due to the force

necessary to open this door, the Plaintiff tried but could not push this door open by himself and could not close this door.   (iv) The action required to plane this door so that it opens with less force and does not stick is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In accessible guestroom 108-A, the restroom door pull side maneuvering clearance in a font approach beyond the latch and parallel to the doorwy for a door with a latch and closer is less than 18 inches.   (ii) The condition in subparagraph (i) above is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) The Plaintiff encountered this door, and due to such lack of door pull side maneuvering clearance, he required assistance to maneuver his wheelchair to exit this restroom.   (iv) The action required to increase this maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In accessible guestroom 108-A, the shower spray handle is clipped in at about 76 inches above the floor of the shower and higher than 48 inches above the floor of the shower and it requires tight grasping, pinching or twisting of the wrist to remove it from its clip holder.   (ii) The handle to the shower spray is located higher than 48 inches above the floor of the shower and it requires tight grasping, pinching or twisting to move it, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2.   (iii) The Plaintiff observed the height of this shower spray above the floor of the shower.   (iv) The action required to provide a compliant shower spray and hose is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In accessible guestroom 108-A, in the restroom the ends of the side grab bars in the shower compartment are more than 6 inches from the adjacent walls.   (ii) These

grab bars in this standard roll-in type shower compartment are installed more than 6 inches from the adjacent walls, in violation of Federal Law 2010, ADAAG § 608.3.2.   (iii) The Plaintiff used these side wall grab bars in this shower compartment, and due to their location, it was very difficult for him to use the shower, and he required assistance to position himself in this shower.   (iv) The action required to relocate or replace these side wall grab bars is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In accessible guestroom 108-A, the top of the seat in the shower is less than 17 inches above the floor.   (ii) The top of the seat in this shower compartment is not between a minimum of 17 inches and a maximum of 19 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 610.   (iii) The Plaintiff used this seat in the shower but due to its height it was very difficult for him to transfer himself back to his wheelchair from this seat.   (iv) The action required to adjust the height of this shower seat is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In accessible guestroom 108-A, the rear wall grab bar behind the toilet is only about 24 inches along and less than 36 inches long.   (ii) The rear wall grab bar behind the water closet is less than 36 inches long, in violation of Federal law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff used this rear wall grab bar, and due to its lack of length it made it very difficult for him to transfer from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar of proper length and location is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In accessible guestroom 108-A, the side wall grab bar near the toilet is less than 42 inches long and it does not extend at least 54 inches from the rear wall.   (ii) This side

wall grab bar is less than the required minimum of 42 inches long and it does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff used this side wall grab bar, and due to its length and position, he had great difficulty transferring himself from his wheelchair to the toilet and back again. (iv) The action required to replace and properly position a new side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

kk.  (i) In accessible guestroom 108-A, the space between the rear wall grab bar behind the toilet and the wall-mounted hair dryer above it is less than 12 inches.   (ii) The space between this rear wall grab bar and the projecting object above it, the wall-mounted hair dryer, is less than the required 12 inches minimum, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) The Plaintiff encountered this hair dryer while using this rear wall grab bar, and it made it even more difficult for him to transfer from his wheelchair to the toilet.   (iv) The action required to relocate this hair dryer is easily accomplishable and able to be carried out without much difficulty or expense.

ll.  (i) In accessible guestroom 108-A, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7. (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

mm.  (i) In the restroom of accessible guestroom 108-A, the towel hook is higher

than 48 inches above the floor.   (ii) This towel hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this towel hook above the floor, and it deters him from staying at Best Western   (iv) The action required to relocate this towel hook is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

nn.   (i) The cross slope of the walking surface around the pool lift is steeper than 1:48 (2%).   (ii) The cross slope of the walking surface around the accessible pool lift is steeper than 1:48 (2%), in violation of Federal law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope and it made his wheelchair unstable.   (iv) The action required to reduce this cross slope around the accessible pool lift is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) The button to operate the spa in the pool area is installed at about 58 inches above the floor and higher than 48 inches above the floor.   (ii) This spa button to operate the spa is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 603.4.   (iii) From his wheelchair, the Plaintiff tried but could not reach this button to operate the spa due to its height above the floor.   (iv) The action required to relocate this button to operate the spa is easily accomplishable and able to be carried out without much difficulty or expense.

**HALLWAY**

pp.   (i) The force needed to open the hallway door near the stairs is about 10 pounds and more than 5 pounds.   (ii) The force required to open this door exceeds the maximum

allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.  (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

**VENDING AREA**

qq.   (i) The soda machine card reader and the snack vending machine car reader in the vending area are higher than 48 inches above the floor.   (ii) The card readers to this soda machine and snack vending machine are higher than 48 inches above the finish floor, and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not use the soda and snack vending machines do to the height of their card readers above the floor.   (iv) The actions required to lower the legs of these vending machines or to replace them are easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS AREA**

rr.   (i) The door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 5 inches and less than 18 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) The Plaintiff encountered this condition, and due to this door pull side maneuvering clearance, the Plaintiff required assistance to enter the fitness area.   (iv) The action required to move this door frame is easily accomplishable and able to be carried out without much difficulty or expense.

32.    All of the foregoing violations are also violations of the 1991 Americans with

Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

33.     The discriminatory violations described in paragraph 31 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act.

34.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

35.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

36.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

37.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

38.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

39.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

40.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Best Western and the parking lot, access aisles and walkways along the accessible route, to make those facilities

readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by taking such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207; Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*